UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANGEL M. TORRES,

                                        Plaintiff,

        v.                                                      **DECISION AND ORDER**
                                                                14-CV-479S
CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

        1.      Plaintiff Angel M. Torres challenges an Administrative Law Judge's ("ALJ")

determination that he is not disabled within the meaning of the Social Security Act ("the

Act").  Plaintiff alleges that he has been disabled since April 2, 2012, due to diabetes

mellitus, degenerative disc disease of the cervical and lumbar spine, right shoulder pain,

and circulation difficulty.

        2.      The Commissioner of Social Security ("Commissioner") denied Plaintiff's

application for disability benefits on July 26, 2012, after which Plaintiff requested an

administrative hearing.  Plaintiff received that hearing via video conference before ALJ

Robert T. Harvey on April 3, 2013.  The ALJ considered the case *de novo*, and on April 18,

2013, issued a decision denying Plaintiff's application.  Plaintiff filed a request for review

with the Appeals Council, but the Council denied that request, prompting Plaintiff to file the

current civil action on June 20, 2014, challenging Defendant's final decision.[1]

        3.      On December 22, 2014, Plaintiff filed a motion for judgment on the pleadings

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 7).   The

---

        [1]The ALJ's April 18, 2013 decision became the Commissioner's final decision in this case when
the Appeals Council denied Plaintiff's request for review.

Commissioner followed suit with her own motion on March 20, 2015. (Docket No. 11).  For the following reasons, Plaintiff's motion is granted, the Commissioner's motion is denied, and this case is remanded for further proceedings.

4.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.     "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

2

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C.§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since April 2, 2012, his alleged onset date (R. at 37);[2] (2) Plaintiff's diabetes mellitus, degenerative disc disease of the cervical and lumbar spine, right shoulder pain, and circulation difficulty are "severe" impairments (R. at 37); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. at 38); (4) Plaintiff retains the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to a few restrictions (R. at 39); and (5) given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. at 45). Ultimately, the ALJ concluded that Plaintiff was not under a disability as defined by the Act from April 2, 2012, through the date of his decision.[3] (R. at 24).

10.     Plaintiff advances a number of challenges to the ALJ's decision, one of which is persuasive. Plaintiff argues that the ALJ failed to properly consider medical listing 1.04(A) for lumbar spine disc injury. Plaintiff argues that the five-step sequential analysis

---

[2] Citations to the underlying administrative record are designated "R."
[3] The ALJ found that Plaintiff was not disabled because he gained transferable skills from past relevant work as a merchandise displayer. (R. at 44).

should have stopped at step three, with a finding that Plaintiff is disabled under medical listing 1.04(A).

The third step in the sequential analysis requires the ALJ to consider whether Plaintiff's symptoms meet the Listing requirements in 1.04(A). Listing 1.04 requires (1) threshold evidence of a spine disorder, such as osteoarthritis or degenerative disc disease; (2) compromise of a nerve root or evidence of nerve root compression; (3) characterized by neuro-anatomic distribution of pain; (4) limitation of motion of the spine; (5) motor loss (atrophy with associated muscle weakness or muscle weakness); (6) accompanied by sensory or reflex loss; and (7) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (numbering not in original).

The ALJ found that Plaintiff did not meet Listing 1.04 because the record did not demonstrate the seven required elements of the listing, but he did not explain his reasoning. (R. at 38). In what is essentially a restatement of the Listing criteria, the ALJ simply found that

> [t]he claimant's degenerative disc disease of the lumbar and cervical spine does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication.

(R. at 38). The ALJ did not explain, however, *why* Plaintiff's condition did not meet the Listing, despite evidence relating to his symptoms.

5

Plaintiff's complaints coupled with supporting medical evidence suggest symptoms that could meet Listing 1.04(A).  Plaintiff reported pain and difficulty with overhead lifting and reaching to the side due to a tear of the spraspinatus tendon. (R. at 40).  Plaintiff also exhibited tenderness, spasms, and diffuse bulges in muscles. (R. at 41).  Plaintiff testified that he experiences "daily leg pain, daily neck and upper extremity pain, right shoulder pain with activity, and headaches every other day, . . . daily circulation problems, daily numbness in hands and legs . . . fatigue and daily leg weakness." (R. at 43).  Plaintiff described his pain as "pinching, stabbing, and throbbing." (R. at 43).  Plaintiff complained of this pain and weakness in both legs on several occasions. (R. at 43, 319, 425).  Plaintiff also has circulation problems, which required several surgeries. (R. at 58).

Evidence in the record appears to support Plaintiff's testimony.  A February 18, 2011 lumbar spine MRI shows degenerative disc disease and osteoarthritis, which may meet element one of Listing 1.04(A). (R. at 271).  Dr. Ziarkowski measured significant limitation of motion of Plaintiff's lumbar spine, which relates to the fourth element. (R. at 425).  Plaintiff also exhibited a degree of motor loss (element five), as noted by Dr. Shankman's statement that Plaintiff "can stand on his toes and his heels, but not walk on them." (R. at 318).  Finally, Dr. Ziarkowski recorded positive straight-leg-raise tests bilaterally, going to element seven. (R. at 425).  The ALJ did not sufficiently analyze these symptoms and evidence in the context of the Listing criteria.

When a claimant's symptoms appear to match those described in a listing, "the ALJ must explain a finding of ineligibility based on the Listings." Booker v. Heckler, No. 83 Civ. 5300, 1984 WL 622, at *3 (S.D.N.Y. July 19, 1984).  The ALJ can use one of two approaches.  First, the ALJ can "compar[e] . . . the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the

impairment, with the corresponding criteria shown for the listed impairments." Easley v. Colvin, No. 13-CV-923S, 2014 WL 5465411, at *3 (W.D.N.Y. Oct. 28, 2014) (citing Hamedallah v. Astrue, 876 F. Supp. 2d 133, 142 (W.D.N.Y. 2012)).  Second, if the ALJ chooses not to conduct this comparison, the ALJ must "expressly adopt a medical source statement that discusses the medical evidence and arrives at express conclusions concerning the Listings." Easley v. Colvin, No. 13-CV-923S, 2014 WL 5465411, at *3 (citing  Booker, 1984 WL 622, at *3).  Here, the ALJ did neither.

Although an ALJ is not obligated to specifically address each piece of evidence in his or her decision, Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir.1983), the ALJ must address key issues with sufficient specificity, Davis v. Astrue, No. 6:09–CV–186 (LEK/GHL), 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010) (citations omitted) (citing, inter alia, Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  To be sure, the Second Circuit explicitly requires an ALJ to set forth his or her reasoning in such a manner so as to "enable [reviewing courts] to decide whether the determination is supported by substantial evidence." Szarowicz v. Astrue, No. 11-CV-277S, 2012 WL 3095798, at *8-*10 (W.D.N.Y. July 30, 2012) (citing Davis, 2010 WL 2545961, at *3).

Here, the record evidence suggests that Plaintiff's symptoms could meet the Listing requirements in 1.04(A).  But this Court cannot determine whether the ALJ properly considered the Listing because his only reference to it is a recitation of the standard. (R. at 38).  If ALJ Harvey did not consider the Listing, the case must be remanded for further consideration.  If he did, the case must still be remanded because his decision lacks a meaningful discussion of Listing 1.04(A), which leaves this Court unable to assess whether the ALJ's decision is supported by substantial evidence.  Accordingly, this Court will remand this case for further consideration and determination of whether Plaintiff meets the

1.04(A) Listing.  See Kovacevic v. Chater, No. 94–CV–600S, 1995 WL 866425, at *8–*9 (W.D.N.Y. Sept. 29, 1995) (requiring explanation when a plaintiff's symptoms appear to match those of a Listing) (citing Booker, 1984 WL 622, at *3);  Szarowicz, 2012 WL 3095798, at *8-*10 (finding that an ALJ must adequately explain his or her decision when a claimant's symptoms appear to match Listing 1.04(A)).

11.     In addition to challenging the ALJ's consideration of Listing 1.04(A), Plaintiff argues that (1) the ALJ erred in failing to properly evaluate the "other source" opinion of chiropractor Dr. Ziarkowski, under SSR 06-03; (2) the ALJ did not properly evaluate the opinion of treating physician Dr. Occhino, under 20 C.F.R. § 404.1527(c); and (3) the ALJ failed to fully and properly assess Plaintiff's credibility as required under SSR 96-7P and 20 C.F.R. § 404.1529.  The ALJ is directed to consider these additional arguments on remand.

12.     After carefully examining the administrative record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision.   Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's Motion for Judgment on the Pleadings is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order.

FURTHER, that the Clerk of Court shall CLOSE this case.

SO ORDERED.


Dated:   July 30, 2015
         Buffalo, New York


                                        /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge